**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
                                                         :
**VERIZON NEW YORK INC.,**                               :

                        **Plaintiff,**                   :   **OPINION AND ORDER**

        - against -                                      :   **06 Civ. 9955 (SAS)**

                                                         :

**CHOICE ONE COMMUNICATIONS**
**OF NEW YORK, INC.,**                                   :

                        **Defendant.**                   :
-----------------------------------------------------------X

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

Verizon New York Inc. ("Verizon") brought an action against Choice

One Communications of New York, Inc. ("Choice One") in the Supreme Court of

the State of New York.[1]  In that action, Verizon asserted breach of contract and

unjust enrichment claims resulting from Choice One's alleged failure to repay

Verizon the overpayments it made to Choice One resulting from the higher

amounts paid under the original Interconnection Agreement compared to the lower

amounts that would be due under a renegotiated agreement, as required by the

"true-up" provision of the parties' original Interconnection Agreement.[2]  Effective

---

[1]    *See* Complaint ("Cmpl."), Index No. 06-603280, attached to defendant's
Notice of Removal.

[2]    *See* Interconnection Agreement Under Sections 251 and 252 of the
Telecommunications Act of 1996, dated as of August 1, 1997, by and between
New York Telephone Company and Cablevision Lightpath, Inc. for New York

November 27, 2001, Choice One opted into[3] an interconnection agreement that

Verizon previously entered into with Cablevision Lightpath, Inc. ("CLI"), another

competitive local exchange carrier ("CLEC") operating in New York.[4]  The ICA

terminated on April 1, 2003.[5]  The ICA provided that its terms and conditions

would continue in full force past April 1, 2003, but only if Choice One chose to

renegotiate the agreement.[6]  The terms and conditions of any renegotiated

agreement are to apply retroactively under the ICA's "true up" provision.[7]

---

(the "ICA" or the "Agreement"), Ex. 2 to the Cmpl.

[3]     Under 47 U.S.C. § 252(i), "[a] local exchange carrier shall make available
any interconnection, service, or network element provided under an agreement
approved under this section to which it is a party to any other requesting
telecommunications carrier upon the same terms and conditions as those provided
in the agreement."

[4]     *See* Cmpl. ¶ 12.  Because Choice One adopted CLI's ICA as its own, the
two contracts are identical. *See id.* ¶ 13.

[5]     *See id.* ¶ 14.

[6]     *See id.* ¶ 15.  The ICA states that "[Choice One] (i) shall, at [Verizon's]
request, or (ii) may, at its option, nine months prior to the expiration of the Term,
make a request to [Verizon] to renegotiate the terms of this Agreement pursuant to
Section 251(c)(1) of the Act." ICA § 21.1.1.

[7]     With regard to the "true up" provision, the Agreement states: "The terms
and conditions of this Agreement shall only continue in full force and effect until
the effective date of the Commission's decision pursuant to any petition filed
under Section 21.1.2 above (the "Arbitration Decision") if CLI requests to
renegotiate pursuant to Section 21.1.1 above, any other terms and conditions of
this Agreement shall be trued up to conform to the Arbitration Decision back to

2

Verizon alleges, in sum, that it continued to pay Choice One at the higher rates specified in the original ICA, even though it was clear to both parties that the rates would be lower in any renegotiated contract.[8]  Therefore, Choice One allegedly owes Verizon for these "overpayments" under the ICA's "true up" provision.

Choice One removed the action to this Court pursuant to 28 U.S.C. § 1446.  In its removal petition, Choice One asserts that this Court has jurisdiction over the action pursuant to 28 U.S.C. § 1331 ("section 1331"),[9] which Verizon does not contest.[10]  However, in the instant motion, Choice One argues that section 252(e)(6) of Title 47 of the United States Code ("section 252(e)(6)") prevents Verizon from bringing suit in federal court until it first obtains a ruling from the New York Public Service Commission ("NY PSC").[11]  Choice One thus moves to

_____

the date of expiration of the Term."  ICA § 21.1.3.

[8]   *See* Memorandum of Law on Behalf of Plaintiff Verizon New York, Inc. In Opposition to Defendant's Motion to Dismiss ("Pl. Mem.") at 2.

[9]   Section 1331 states: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

[10]   *See* Notice of Removal ¶ 7 ("This action thus 'necessarily depends on' federal law, and original federal court jurisdiction is proper under 28 U.S.C. § 1331.").

[11]   *See* Defendant's Memorandum of Law in Support of Its Motion to Dismiss ("Def. Mem.) at 1-2 ("Verizon impermissibly brought this action in state court even though it knew that under the provisions of the Federal Act, Verizon must

dismiss the Complaint for failure to state a claim or, alternatively, for lack of subject matter jurisdiction.[12]

Contrary to the agreement of the parties,[13] this Court does not have subject matter jurisdiction over Verizon's Complaint which alleges, in essence, state law claims that do not explicitly or implicitly refer to, incorporate, or reference any provision of federal law. Accordingly, this action is dismissed for lack of subject matter jurisdiction and remanded to the Supreme Court of the State of New York.

## I.    BACKGROUND

### A.    The Telecommunications Act of 1996

The Telecommunications Act of 1996 ("TCA" or the "Act")[14]

---

first exhaust its remedies before the NY PSC before any court can properly hear the dispute. Indeed, federal courts have made clear that claims concerning the terms of an interconnection agreement . . . such as the one in dispute in this matter, *must* first be ruled on by the appropriate administrative agency before being heard by a federal court. Verizon has asserted this very argument before other federal courts, but has failed to satisfy this requirement in the instant matter.") (emphasis in original).

[12]    *See* Notice of Motion dated November 17, 2006.

[13]    *See* Memorandum of Law on Behalf of Plaintiff Verizon New York, Inc. in Opposition to Defendant's Motion to Dismiss ("Pl. Mem.") at 11 ("Choice One argues – and Verizon agrees – that this Court has jurisdiction over Verizon's complaint under § 1331.").

[14]    Pub. L. 104, 110 Stat. 56 (codified at 47 U.S.C. § 251 *et seq.*).

amended the Federal Communications Act of 1934 in an attempt to deregulate the

telecommunications industry. "The Act has been called one of the most ambitious

regulatory programs operating under 'cooperative federalism,' and creates a

regulatory framework that gives authority to state and federal entities in fostering

competition in local telephone markets."[15] The TCA ended the monopolies that

States historically granted to incumbent local exchange carriers ("ILECs"). The

Act did so by subjecting ILECs to various duties intended to facilitate market

entry by permitting CLECs to interconnect with their existing networks.[16]

> The Act encourages competitive local telephone markets
> by imposing several duties on incumbent local exchange
> carriers, the telephone companies holding monopolies in
> local markets prior to the Act's implementation. The
> incumbent must negotiate or arbitrate agreements with
> competing local carriers, the new entrants into the
> deregulated market, by providing one of three methods of
> competition: (1) the incumbent carrier must provide
> interconnection to its network to a competing carrier that
> builds or has its own network, 47 U.S.C. § 251(c)(2); (2)
> the incumbent carrier must provide access to its network
> elements on an "unbundled basis" to a competing carrier
> wishing to lease all or part of the incumbent's network,
> rather than build its own, 47 U.S.C. § 251(c)(3); and (3) the
> incumbent must sell its retail services at wholesale prices
> to a competing carrier that will resell the services at retail

---

[15] *Michigan Bell Tel. Co. v. MCIMetro Access Transmission Servs., Inc.*, 323 F.3d 348, 351 (6th Cir. 2003).

[16] *See* 47 U.S.C. § 251(a) - (c).

prices. 47 U.S.C. § 251(c)(4).[17]

With regard to interconnection agreements,

> [s]ection 252 sets out the process by which incumbent
> LECs and prospective carriers establish interconnection
> agreements. First, incumbent LECs and prospective
> carriers must negotiate in good faith to reach voluntary
> interconnection agreements. At any time during the
> negotiations, a party may ask the appropriate state
> commission to participate as a mediator in the negotiations.
> *See id.* § 252(a)(2). If negotiations prove unsuccessful,
> subsection 252(b) provides for compulsory arbitration of
> any open issues. During the period from the 135th to the
> 160th day after an incumbent LEC receives a request for
> negotiation, any party to the negotiation may petition the
> state commission to arbitrate any open issues. *See id.* §
> 252(b)(1). Sections 251 and 252 establish certain
> standards that the state commission must follow in
> resolving open issues by arbitration and in imposing
> conditions on the parties. The state commission is also
> bound by Federal Communications Commission ("FCC")
> regulations issued pursuant to § 251.
>
> Subsection 252(e) requires any interconnection agreement
> reached by negotiation or arbitration to be submitted to the
> state commission for approval and specifies the grounds on
> which a state commission can reject an agreement.
> Specifically, state commissions may reject negotiated
> interconnection agreements only if the commission finds
> (1) that the agreement discriminates against a carrier that
> is not a party to the agreement or (2) that implementation
> of the agreement (or a part thereof) would be inconsistent
> with "the public interest, convenience, and necessity." *Id.*
> § 252(e)(2)(A). A state commission may reject an

---

[17] *Michigan Bell*, 323 F.3d at 352.

> arbitrated interconnection agreement only if the agreement
> (or part thereof) (1) does not meet the requirements of §
> 251 and its implementing regulations or (2) fails to meet
> the pricing standards set forth in subsection 252(d). *See id.*
> § 252(e)(2)(B).[18]

The Seventh Circuit has stated the following regarding federal court jurisdiction:

> The Act provides that federal district courts have exclusive
> jurisdiction to review FCC or state commission actions
> relating to interconnection agreements. In subsection
> 252(e)(4), Congress expressly eliminated state court
> jurisdiction to review actions of state commissions in
> approving or rejecting agreements under § 252. Moreover,
> subsection 252(e)(6), titled "Review of State commission
> actions," provides that, whenever a state commission fails
> to act, the exclusive remedies for that failure to act will be
> proceedings by the FCC and any judicial review of the
> FCC's actions. Subsection 252(e)(6) also provides that,
> "[i]n any case in which a State commission makes a
> determination under this section, any party aggrieved by
> such determination may bring an action in an appropriate
> Federal district court to determine whether the agreement
> or statement meets the requirements of section 251 [and
> section 252]."[19]

Thus, in the spirit of "cooperative federalism" as embodied in the Act, "state

commissions are directed by provisions of the Act and FCC regulations in making

---

[18]   *MCI Telecomms. Corp. v. Illinois Bell Tel. Co.*, 222 F.3d 323, 328-29 (7th Cir. 2000).

[19]   *Id.* at 329.

7

decisions, which are subject to federal court review."[20]

## B.    The Original ICA

As stated earlier, although the ICA terminated on April 1, 2003, its terms and conditions would continue in full force past after that date, but only if Choice One chose to renegotiate the agreement.[21]  If the parties could not reach agreement on the terms of a new ICA, after conducting good faith negotiations in response to Choice One's request for renegotiation, "then either Party may, beginning one hundred and thirty-five (135) days after the Renegotiation Request Date, file a petition for arbitration by the Commission pursuant to Section 252(b) of the Act."[22]

On August 26, 2002, Choice One requested renegotiation of the ICA consistent with the requirements of section 21.1.1.[23]  This request triggered a twenty-five day window, beginning 135 days after Choice One's request and

---

[20]    *Michigan Bell*, 323 F.3d at 352.

[21]    *See* Cmpl. ¶ 15.  The ICA states that "[Choice One] (i) shall, at [Verizon's] request, or (ii) may, at its option, nine months prior to the expiration of the Term, make a request to [Verizon] to renegotiate the terms of this Agreement pursuant to Section 251(c)(1) of the Act."  ICA § 21.1.1.

[22]    ICA § 21.1.2.

[23]    *See* NY PSC Order Resolving Arbitration, issued and effective September 23, 2005 ("NY PSC Order" or "September 23, 2005 Order"), Ex. 4 to the Cmpl., at 25.

ending 160 days after its request, for either party to request binding arbitration by the NY PSC.[24]  Neither Verizon nor Choice One requested any binding arbitration while the statutory window was open.[25]  Therefore, the window closed on the 160th day after Choice One's request for renegotiation.[26]  In July of 2005, Choice One elected to have its interconnection relationship with Verizon governed by one of Verizon's published tariffs, rather than a renegotiated interconnection agreement.[27]

## C.    The NY PSC Order

In October 2004, Verizon insisted that Choice One comply with its obligation to initiate negotiations for a successor interconnection agreement.[28] Because those negotiations were unsuccessful, Verizon filed a petition for binding

---

[24]    *See* ICA § 21.1.2.  *See also* 47 U.S.C. § 252(b) ("During the period from the 135th to the 160th day (inclusive) after the date on which an incumbent local exchange carrier receives a request for negotiation under this section, the carrier or any other party to the negotiation may petition a State commission to arbitrate any open issues.").

[25]    *See* NY PSC Order at 25.

[26]    *See id.*

[27]    *See* Cmpl. ¶ 3.  For a discussion of the tariff opt-in provision, *see generally U.S. West Commc'ns, Inc. v. Sprint Commc'ns Co., L.P.*, 275 F.3d 1241 (10th Cir. 2002).

[28]    *See* Cmpl. ¶ 20.

arbitration with the NY PSC in April 2005.[29]  Choice One opposed Verizon's demand for arbitration.[30]  On September 23, 2005, the NY PSC ruled that because Verizon did not have the right, under either the original ICA or under applicable provisions of the Act, to demand negotiations for a new interconnection agreement, it could not petition the NY PSC for binding arbitration.[31]

Verizon now maintains that the NY PSC Order triggered the "true up" provision in the parties' original ICA.[32]  Choice One counters that by choosing to operate without a new interconnection agreement, it avoided its obligations under the original ICA's "true up" provision and was therefore entitled to retain the benefit of the payments made by Verizon under the original ICA.[33]  In October 2005, Verizon filed a petition with the NY PSC for reconsideration of the September 23, 2005 Order in which it also requested a ruling that the NY PSC

---

[29]  *See id.* ¶ 21.

[30]  *See* NY PSC Order at 10 ("Choice One insists there is no reason to continue the arbitration and there are no outstanding issues to be decided.  Choice One stands firm on its right to purchase interconnection from the Verizon tariff.").

[31]  *See id.* at 22-25 (holding that Verizon had no right, under the law or the prior ICA, to initiate arbitration proceedings).

[32]  *See* Cmpl. ¶ 26 (alleging that the NY PSC Order was an "Arbitration Decision" which triggered the "true up" provision in section 21.1.3 of the original ICA).

[33]  *See id.* ¶ 27.

Order triggered the ICA's "true up" provision.[34] After nearly eleven months without a ruling from the NY PSC, Verizon withdrew its petition for reconsideration and filed suit against Choice One in the Supreme Court of the State of New York, seeking enforcement of the ICA's "true up" provision.[35]

## II.   DISCUSSION

### A.   The Supreme Court's Decision in *Verizon Maryland*

In *Verizon Maryland Inc. v. Public Service Commission of Maryland*, the Supreme Court addressed the "question of whether federal district courts have jurisdiction over a telecommunication carrier's claim that the order of a state utility commission requiring reciprocal compensation for telephone calls to Internet Service Providers ["ISP"] violates federal law."[36] Before bringing an action in federal court, Verizon Maryland filed a complaint with the Maryland Public Service Commission ("MPSC" or the "Commission") in which it argued that a ruling by the Federal Communications Commission ("FCC") established that it was no longer required to pay reciprocal compensation for ISP traffic.[37] The

---

[34]   *See* Pl. Mem. at 3.

[35]   *See id.*

[36]   535 U.S. 635, 638 (2002).

[37]   *See id.* at 640.

11

MPSC rejected this argument and held that "as a matter of state contract law, WorldCom and Verizon had agreed to treat ISP-bound calls as local traffic subject to reciprocal compensation."[38]

Verizon Maryland then filed an action in federal court, citing section 252(e)(6)[39] and section 1331 as the bases for subject matter jurisdiction.[40]  In the federal court action, Verizon argued that the MPSC's order violated the Act and the FCC's ruling.[41]  The Supreme Court framed the issue as "whether the Act, or an FCC ruling issued thereunder, precludes the Commission from ordering payment of reciprocal compensation . . . ."[42]  Thus, the action alleged a garden-

---

[38]   *Id.*

[39]   Section 252(e)(6) states that "[i]n any case in which a State commission makes a determination under this section, any party aggrieved by such determination may bring an action in an appropriate Federal district court to determine whether the agreement or statement meets the requirements of section 251 of this title and section."  The "determination" referred to in section 252(e)(6) is mandated by section 252(e)(1) which states: "Any interconnection agreement adopted by negotiation or arbitration shall be submitted for approval to the State commission.  A State commission to which an agreement is submitted shall approve or reject the agreement, with written findings as to any deficiencies."  Section 251 details the general duties of telecommunication carriers, among other things.

[40]   *See Verizon Maryland*, 535 U.S. at 640.

[41]   *See id.*

[42]   *Id.* at 643.

variety federal preemption claim.

In resolving the jurisdictional inquiry, the Supreme Court first addressed the source of the MPSC's authority to interpret and enforce interconnection agreements. The Court noted that the "determination at issue here is neither the approval or disapproval of a negotiated agreement nor the approval or disapproval of a statement of generally available terms."[43] Thus, the dispute did not technically fall within the ambit of section 252(e)(6). However, the parties argued "that a state commission's authority under § 252 implicitly encompasses the authority to interpret and enforce an interconnection agreement that the commission has approved, and that an interpretation or enforcement decision is therefore a 'determination under [§ 252]' subject to federal review."[44] The Supreme Court did not decide this issue, holding that "even if § 252(e)(6) does not *confer* jurisdiction, it at least does not *divest* the district courts of their authority under 28 U.S.C. § 1331 to review the Commission's order for compliance with

---

[43] *Id.* at 641.

[44] *Id.* at 641-42. Although the parties disputed whether federal or state law confers this authority, none of the parties took the position that the Commission lacked jurisdiction to interpret and enforce the agreement. *See id.* at 642 n.2.

13

federal law."[45]

The Supreme Court wrote the following with regard to federal

question jurisdiction:

> Verizon alleged in its complaint that the Commission
> violated the Act and the FCC ruling when it ordered
> payment of reciprocal compensation for ISP-bound calls.
> Verizon sought a declaratory judgment that the
> Commission's order was unlawful, and an injunction
> prohibiting its enforcement. We have no doubt that federal
> courts have jurisdiction under § 1331 to entertain such a
> suit. Verizon seeks relief from the Commission's order "on
> the ground that such regulation is pre-empted by a federal
> statute which, by virtue of the Supremacy Clause of the
> Constitution, must prevail," and its claim "thus presents a
> federal question which the federal courts have jurisdiction
> under 28 U.S.C. § 1331 to resolve." *Shaw v. Delta Air
> Lines, Inc.*, 463 U.S. 85, 96, n. 14 (1983).[46]

Accordingly, the Court held that section 1331 "provides a basis for the jurisdiction

over Verizon's claim that the Commission's order requiring reciprocal

---

[45] *Id.* at 642 (emphasis in original). The Supreme Court noted that section
252(e)(6) "does not establish a distinctive review mechanism for the commission
actions that it covers (the mechanism is the same as § 1331: district court review),
and it does not distinctively limit the substantive relief available." *Id.* at 644.
Given that section 252(e)(6) does not even mention subject matter jurisdiction, the
Supreme Court interpreted it as merely conferring a private right of action. *See id.*

[46] *Id.* at 642 (parallel citations omitted).

14

compensation for ISP-bound calls is *pre-empted* by federal law."[47]

In a concurring opinion, Justice David Souter noted that Verizon did not seek "an order enjoining the State from enforcing purely state-law rate orders of dubious constitutionality . . . ."[48]  Instead, Verizon claimed that the MPSC wrongly decided a question of federal law.[49]  Thus, Verizon sought an alternate adjudication of a federal question by means of appellate review in the district court.[50]  According to Justice Souter, "[w]hether the interpretation of a reciprocal-

---

[47]  *Id.* at 648 (emphasis added).  In so holding, the Court made the following observations:

> Verizon's claim thus falls within 28 U.S.C. § 1331's general grant of jurisdiction, and contrary to the Fourth Circuit's conclusion, nothing in 47 U.S.C. § 252(e)(6) purports to strip this jurisdiction.   Section 252(e)(6) provides for federal review of an agreement when a state commission "makes a determination under [§ 252]." If this does not include (as WorldCom, Verizon, and the United States claim it does) the interpretation or enforcement of an interconnection agreement, then § 252(e)(6) merely makes *some other* actions by state commissions reviewable in federal court. This is not enough to eliminate jurisdiction under § 1331.

*Id.* at 643 (emphasis in original).

[48]  *Id.* at 650 (Souter, J., concurring).

[49]  *See id.*

[50]  *See id.* at 650-51.

compensation provision in a privately negotiated interconnection agreement presents a federal issue is a different question which neither the Court nor I address at the present."[51]

On remand, the district court bifurcated Verizon's action into the following two claims: (1) a violation of federal law claim; and (2) a contract misinterpretation claim. On appeal of the district court ruling, the Fourth Circuit Court of Appeals described the lower court's decision in the following terms:

> On Count I . . . Verizon was actually asserting two distinct claims: first, that the PSC's interpretation of the interconnection agreement violated federal law; and second, that the PSC's interpretation violated the parties' intent as reflected in the agreement. The court took jurisdiction over the first claim and awarded summary judgment to the defendants. Then, the court held that neither § 252(e)(6) nor § 1331 supported jurisdiction over the remaining claim, which it construed as a contract misinterpretation claim arising under state law. The court declined to exercise supplemental jurisdiction over this claim and dismissed it.[52]

Verizon Maryland appealed the district court's rulings:

> First, Verizon argues that the district court erred in holding that there is no federal jurisdiction over its claim that the [M]PSC misinterpreted the interconnection agreement.

---

[51]   *Id.* at 650 n.4.

[52]   *See Verizon Maryland, Inc. v. Global NAPS, Inc.*, 377 F.3d 355, 362 (4th Cir. 2004).

> Second, Verizon challenges the district court's determination that federal law did not prohibit the [M]PSC from imposing reciprocal compensation terms in arbitration proceedings.[53]

On appeal, the Fourth Circuit reversed the lower court's ruling with respect to the contract misinterpretation claim and found that there was jurisdiction under section 1331.[54] The majority based this holding, in large part, on the fact that the contract in issue was an interconnection agreement, which is a "creation of federal law" through which the Act is implemented and enforced.[55] Because reciprocal compensation is a duty imposed by the Act,[56] the Fourth Circuit reasoned that the resolution of Verizon's contract claim depends on "the interpretation and application of federal law."[57] The court described the role of state public utility commissions in the "'new *federal* regime'"[58] created by the Act

---

[53]  *Id.*

[54]  *See id.* at 363.

[55]  *Id.* at 364 (quotation marks and citation omitted).

[56]  Section 251 imposes on telecommunications carriers the "duty to establish reciprocal compensation arrangements for the transport and termination of telecommunications."  47 U.S.C. § 251(b).

[57]  *Verizon Maryland*, 377 F.3d at 365.

[58]  *Id.* (quoting *AT&T Corp. v. Iowa Utils. Bd.*, 525 U.S. 366, 378 n.6 (1999)) (emphasis in original).

as follows:

> State utility commissions have a role in this regime, but
> that role is subject to federal oversight. Here, the [M]PSC
> interpreted an interconnection agreement mandated by the
> Act.    Because the agreement and the specific duty
> (reciprocal compensation) it incorporates have a direct
> connection to the Act, the purpose of the Act is best served
> by subjecting the [M]PSC's contract interpretation decision
> to federal review in the district court.    *See BellSouth
> Telecomms., Inc. v. MCIMetro Access Trans. Servs., Inc.*,
> 317 F.3d 1270, 1278 (11th Cir. 2003) (en banc).[59]

In sum, the court held that Verizon Maryland's contract claim raised a

substantial question of federal law based, in part, on the fact that the contractual

duty at issue was imposed by federal law.[60]

> [W]hen there is a claim that a state utility commission has
> misinterpreted an interconnection agreement provision that
> implements a duty imposed by the Act, review should be
> available under § 1331 in district court. *We are not saying
> that every dispute about a term in an interconnection
> agreement   belongs in federal court*   , but when the
> contractual dispute (like the one here) involves one of the
> 1996 Act's essential duties, there is a federal question.[61]

Judge Paul Niemeyer disagreed with the majority and concluded that

the district court did not have jurisdiction to decide Verizon's contract

---

[59]  *Id.* (quotation marks and citation omitted, emphasis in original).

[60]  *See id.* at 366.

[61]  *Id.* (emphasis added).

18

misinterpretation claim.[62]  In reaching this conclusion, Judge Niemeyer first

determined that section 252(e)(6) does not provide federal court review of

commission decisions interpreting interconnection agreements.[63]  Judge Niemeyer

then concluded that the claim that the MPSC misinterpreted the language of the

interconnection agreement under state-law contract principles did not arise under

federal law within the meaning of section 1331, even though the ICA was

mandated by the TCA.[64]

In his dissent, Judge Niemeyer noted two issues that the Supreme

Court did not decide in *Verizon Maryland*.  *First*, "the Supreme Court did not

decide whether § 256(e)(6) conferred jurisdiction for review of a State commission

decision *interpreting or enforcing* an interconnection agreement."[65]  *Second,* the

Court "did not address whether § 1331 would encompass Verizon's claim for

review of the [M]PSC's decision based on its alleged *misinterpretation* of the

---

[62]  *See id.* at 370 (Niemeyer, J., concurring in part and dissenting in part).
Judge Niemeyer agreed with the majority that the district court had jurisdiction
under section 1331 to consider the claim that the MPSC's interpretation of the
agreement violated the TCA.  *See id.*

[63]  *See id.*

[64]  *See id.*

[65]  *Id.* at 375 (emphasis in original).

interconnection agreement."[66]  Judge Niemeyer then addressed these two issues in

his dissenting opinion:

> When Verizon challenged this interpretation in the district
> court, the court concluded that the issue was a
> garden-variety contract issue governed by Maryland law
> and that review of the PSC's order in this regard must
> proceed from the Commission to State court, not to federal
> court, consistent with the overall regulatory scheme of the
> 1996 Act described above.  I agree with the district court,
> and I base my conclusion on two propositions: (1) the
> misinterpretation claim does not fall within the scope of 47
> U.S.C. § 252(e)(6), and therefore federal jurisdiction is not
> authorized by that provision; and (2) apart from §
> 252(e)(6), a contract interpretation claim for an
> interconnection agreement, even though entered into under
> the mandate of the 1996 Act, does not "arise under federal
> law," as that phrase is used in 28 U.S.C. § 1331.[67]

The first conclusion is premised on the assumption that section 252(e)(6) "extends

only to determinations to approve or reject negotiated or arbitrated interconnection

agreements."[68]  Because the States' authority to enforce interconnection

agreements is not derived from section 252, a State commission's interpretation or

---

[66]   *Id.* (emphasis in original).

[67]   *Id.* at 376.

[68]   *Id.* at 378.  *See also id.* at 383 ("Section 252 is not ambiguous.  It confers
authority on State public commission to make specific determinations, and those
determinations are reviewable in federal court.  Otherwise the 1996 Act leaves
State commissions the authority they had under the 1934 Act, including the
authority to resolve disputes under telecommunications agreements.").

enforcement of an interconnection agreement is not a determination under section 252.[69]  Accordingly, "States are left with the responsibility for reviewing their own commission's decisions administering and enforcing interconnection agreements."[70]

With regard to section 1331 jurisdiction, Judge Niemeyer observed that the "federal interest is in the formation of interconnection agreements in furtherance of the goal of promoting competition in local telecommunications; any federal interest in private parties' reciprocal-compensation terms is negligible."[71] Judge Niemeyer also noted that "the 1996 Act reveals a congressional intent that alleged breaches of the federally contemplated [interconnection] agreements be heard by State courts applying State law."[72]  As a result, he concluded that Verizon Maryland's claim that the MPSC misinterpreted the privately negotiated reciprocal-compensation terms of its interconnection agreement did not present a

---

[69]  *See id.*

[70]  *Id.*

[71]  *Id.* at 391.

[72]  *Id.* at 392.  "Moreovere, the cooperative-federalism scheme created by the 1996 Act reveals congressional intent to limit federal reach into areas traditionally regulated by states." *Id.*

federal question for purposes of section 1331.[73]  The dissenting opinion reaches

the following conclusions:

> The federal interest in promoting local competition is
> focused on the *formation* of interconnection agreements
> that comply with §§ 251 and 252.  Thus, Congress
> designed the provisions of §§ 251 and 252 to enlist State
> commissions to mediate, arbitrate, and approve or reject
> interconnection agreements.  Section 252(e)(6) provides
> for federal review of those determinations to ensure
> compliance with §§ 251 and 252. The 1996 Act, however,
> is completely silent about the         *enforcement*   of
> interconnection agreements, which, based on the Act's
> cooperative-federalism scheme, indicates that such disputes
> are to be resolved by the States.   Once approved,
> interconnection agreements are binding agreements with
> contractual rights and duties to be enforced according to
> State contract law in State commissions and courts.  The
> federal interest in the content of local carriers' voluntarily
> negotiated reciprocal-compensation terms is negligible.
> Congress did not intend for disputes over the interpretation
> of voluntarily negotiated interconnection agreements to be
> heard in federal courts.[74]

The argument against a finding of federal jurisdiction in the instant

case is even stronger.  The "true up" provision at issue was a privately negotiated

contractual provision which was not derived from federal law.  In fact, the ICA

states: "The validity of this Agreement, the construction and enforcement of its

---

[73]   *See id.* at 394.

[74]   *Id.* at 393 (emphasis added).

terms, and the interpretation of the rights and duties of the Parties shall be governed by the laws of the State of New York other than as to conflicts of laws, except insofar as federal law may control any aspect of this Agreement, in which case federal law shall govern such aspect."[75] There is no provision in the TCA, or any other federal law, which deals with "true up" obligations. Consequently, the source of Verizon's claims is state law, not federal. Furthermore, in its Complaint, Verizon alleges that it was the September 23, 2005 decision of the NY PSC that triggered the application of the "true up" provision. Thus, a decision of a State commission (the NY PSC) triggered the application of a State law contractual provision (the "true up" provision). It is difficult to see how this implicates a federal question sufficient for the invocation of subject matter jurisdiction under section 1331. In sum, this case presents a State law matter that should be resolved in State court under principles of comity and cooperative-Federalism.[76] I reach this conclusion notwithstanding the parties' agreement that this Court has subject matter jurisdiction over the instant dispute.

---

[75]   ICA § 30.7.

[76]   This conclusion was contemplated by the Supreme Court in *Verizon Maryland* when it stated that "here the elimination of federal district-court review would not amount to the elimination of all review . . . ."). *Verizon Maryland*, 535 U.S. at 643.

23

**B.     A Circumscribed Approach to Federal Jurisdiction**

In *Illinois Bell Telephone Company v. Worldcom Technologies., Inc.*, the Seventh Circuit addressed the issue of "whether a decision of the Illinois Commerce Commission [ICC] regarding reciprocal compensation for telephone connections to Internet service providers violates federal law."[77]  Although the court held that it had jurisdiction under section 252(e) to review the actions of the ICC, it limited its jurisdiction to reviewing a state commission's action for compliance with sections 251 and 252 of the TCA.[78]  With its jurisdiction so limited, the issue before the court was "whether the ICC, in determining that under the agreements the parties intended that calls to Internet service providers would be subject to reciprocal compensation, violated federal law."[79]

The court held that the ICC's conclusion that reciprocal compensation should apply to such Internet calls did not violate the Act or the FCC's

---

[77]   179 F.3d 566, 568 (7th Cir. 2000).

[78]   *See id.* at 571.  This scope of review was dictated by the court's earlier decision in *MCI Telecomms. Corp. v. Illinois Commerce Comm'n*, 168 F.3d 315, 320 (7th Cir. 1999), where it stated that it would not review the actions of a state commission for compliance with state law.

[79]   *Illinois Bell*, 179 F.3d at 571.

interpretation of the Act.[80]  However, the court was careful in describing the extent

of its holding as follows:

> Lest there be any misunderstanding about what this
> conclusion means, we add that any issues of state law
> remain open for determination in the proper forum.
> Section 252(e)(6) authorizes a federal court to determine
> whether the agency's decision departs from federal law.  A
> decision "interpreting" an agreement contrary to its terms
> creates a different kind of problem - one under the law of
> contracts, and therefore one for which a state forum can
> supply a remedy.
>
> This allocation of authority has a potential to cause
> problems.   Federal jurisdiction under § 252[e](6) is
> exclusive when it exists.   Thus every time a carrier
> complains about a state agency's action concerning an
> agreement, it must start in federal court (to find out
> whether there has been a violation of federal law) and then
> may move to state court if the first suit yields the answer
> "no." This system may not have much to recommen[d] it,
> but, as the Supreme Court observed in *Iowa Utilities
> Board*, the 1996 Act has its share of glitches, and if this is
> another, the[] legislature can provide a repair.[81]

---

[80]  *See id.* at 573.  *See also id.* at 574 ("In short, nothing in what the ICC said
violates federal law in existence at this time.").

[81]  *Id.* at 574.  *But see Wisconsin Bell Inc. v. TCG Milwaukee, Inc.*, 301 F.
Supp. 2d 893, 898 (W.D. Wisc. 2002) (anticipating that the Seventh Circuit would
"repudiate its view that federal courts may never review state law determinations
made by state commissions pursuant to the Telecommunications Act" given the
existence of supplemental jurisdiction under 28 U.S.C. § 1367(a) in the wake of
*Verizon Maryland*).  It should be noted that there is no supplemental jurisdiction in
the instant case as there are no federal claims other than Choice One's assertion of
jurisdiction under 28 U.S.C. § 1331.  In its Notice of Removal, Choice One claims

25

The issue of whether ISP calls are local traffic, and thus subject to reciprocal compensation under interconnection agreements, was also addressed by a state commission as described in the opinion in *Bellsouth Telecommunications, Inc. v. MCIMetro Access Transmission Services, Inc.* The majority opinion held that "the Georgia Public Service Commission [GPSC] has the authority under federal law to interpret and enforce the interconnection agreements at issues between the parties and that its determination is subject to review in the federal courts."[82] The majority reached that conclusion, in part, by describing interconnection agreements as tools through which the Telecommunications Act is enforced.[83] According to the majority, it was entirely consistent with the Act "to have state commissions interpret contracts and subject their interpretations to federal review in the district courts."[84]

---

that this action "necessarily depends on" federal law because: (1) the interconnection agreement is a creation of federal law; and (2) Verizon's allegations of breach of the instant ICA specifically concerns rates established for "reciprocal compensation." Section 251(b)(5) imposes on all local exchange carriers the "duty to establish reciprocal compensation arrangements for the transport and termination of telecommunications." Neither argument is persuasive.

[82]   317 F.3d at 1279.

[83]   *See id.* at 1278.

[84]   *Id.*

Of greater importance to the instant action is the dissenting opinion of Judge Gerald Bard Tjoflat.  In his dissent, Judge Tjoflat states that "the authority of the GPSC under Georgia law is a state law issue that this court should decline to reach, and that federal law does not preclude PSCs from adjudicating post-agreement disputes if states make the choice to allocate adjudicative power to their PSC's . . . ."[85]  Judge Tjoflat addressed the Supreme Court's decision in *Verizon Maryland* as follows:

> The Supreme Court did *not* hold that federal jurisdiction exists to review *all* PSC interpretation/enforcement decisions pursuant to 28 U.S.C. § 1331.  The only place section 1331 was implicated in *Verizon* was with regard to the *federal question* - namely, whether a PSC conclusion that the CLECs and the ILEC had agreed to deem ISP-bound calls "local" *is preempted by federal law.*  The Court never said that a PSC adjudication of an interconnection agreement inherently entails a federal question.  In his concurrence, Justice Souter made clear that the Court was not deciding what the majority of this court claims it decided: "Whether the interpretation of a reciprocal compensation provision in a privately negotiated interconnection agreement presents a federal issue *is a different question which neither the Court nor I address at the present*."  *Verizon*, 122 S.Ct. at 1763 n. 4 (emphasis added).[86]

---

[85]   *Id.* at 1288.

[86]   *Id.* at n.9 (emphasis in original).

27

In his dissenting opinion, Judge Tjoflat also summarized Bellsouth's

argument concerning "coerced" contracts and federal common law:

> Another argument is that either the rule of decision for *all*
> post-agreement disputes is some sort of federal common
> law of contracts, or else the disputes "arise under" federal
> law even if state law provides the rule of decision because
> the agreements are "coerced" by the federal government
> and they are an integral part of a federal regulatory scheme.
> Therefore, BellSouth argues, all interconnection disputes
> can wind up in federal court pursuant to 28 U.S.C. §
> 1331.[87]

With regard to "coerced" contracts, Judge Tjoflat opined as follows:

> The fact that the interconnection agreements are "coerced"
> and made pursuant to a federal regulatory scheme is not
> enough to make run-of-the-mill contract claims - say, a
> dispute over performance or price - subject to section 1331
> jurisdiction.   If state law is the rule of decision, then
> ordinary contract claims would not raise a "federal issue"
> for district courts to resolve. Indeed, one Supreme Court
> case has expressly held that a federally compelled
> contractual provision was not to be construed in federal
> court under principles of federal law, but rather under state
> law applied in state courts. *See Jackson Transit Auth. v.
> Local Div. 1285, Amalgamated Transit Union*, 457 U.S.
> 15, 29 (1982).[88]

With regard to federal common law, Judge Tjoflat concluded that state law must

be the rule of decision where there is no Congressional authorization for federal

---

[87]   *Id.* at 1290 (emphasis in original).

[88]   *Id.* (parallel citations omitted).

courts to craft common-law rules for interpreting interconnection agreements.[89]

> There is no clear congressional intent for courts to craft
> common law rules in the context of disputes over
> interconnection agreements. Indeed, the invocation of
> federal common law would be in considerable tension with
> the reverse-preemption provision in the 1996 Act and the
> Act's scheme of cooperative federalism . . . by ceding new
> authority to the federal courts where none existed before,
> while simultaneously displacing state law.[90]

Judge Tjoflat opined that with respect to federal court jurisdiction,

section 252(e)(6) only empowers federal courts to review public service

commission decisions approving or rejecting voluntary interconnection

agreements and no more.[91]  As for cooperative federalism and the presumption

against federal jurisdiction, Judge Tjoflat stated the following:

> Clearly, state commission decisions that are not expressly
> designated for review in federal court are left for review by
> state courts, as provided by the existing law of the state
> that created the state commission. The reverse-preemption
> provision of the 1996 Act stands for the proposition that
> state jurisdiction should be retained (to the exclusion of
> federal jurisdiction) unless there is a clear statement to the
> contrary. Another clear statement rule is at play in this
> case: because federal courts are courts of limited
> jurisdiction, when their jurisdiction is created by statute,

---

[89]  *See id.* at 1291.

[90]  *Id.*

[91]  *See id.* at 1303.

the statute is strictly construed. *See Turner v. Bank of N. Am.*, 4 U.S. (4 Dall.) 8, 11, 1 L.Ed. 718 (1799) (stating that because federal courts are of limited jurisdiction, "the fair presumption is . . . that a cause is without its jurisdiction, until the contrary appears."); *see also Jackson Transit Auth. v. Local Div. 1285, Amalgamated Transit Union*, 457 U.S. 15, 30, (1982) (Powell, J., concurring) ("Because a federal court should exercise extreme caution before assuming jurisdiction not clearly conferred by Congress, we should not condone the implication of federal jurisdiction over contract claims in the absence of an unambiguous expression of congressional intent."). The state-authority presumption of the federal scheme, combined with this venerable principle of federal jurisdiction, demands a clear statement that state review is abolished in lieu of federal review. Both policies stand for one overarching principle: Federal jurisdiction is not to be presumed or implied. I cannot find a clear statement; indeed, the plain language forces me to reach the opposite conclusion. "Thus, although the State commission may have had jurisdiction to administer and enforce interconnection agreements, review of such decisions by the commission is taken to the State courts as determined by the State review procedure preserved by the 1996 Act." *Bell Atl. Md. Inc. v. MCI WorldCom, Inc.*, 240 F.3d 279, 305 (4th Cir. 2001), *rev'd, Verizon Md. Inc. v. Pub. Serv. Com'n of Md.*, 535 U.S. 635 (2002).[92]

As the Seventh Circuit in *Illinois Bell* and Judge Tjoflat's dissenting opinion in *Bellsouth* prove, disputes over contract interpretation are matters of state law that must be resolved in state, not federal, court. And while *Illinois Bell* and *Bellsouth* both dealt with decisions of state public service commissions, the

---

[92] *Id.* at 1301 (parallel citations omitted).

argument against finding federal jurisdiction in this case is even stronger. There is no statute here granting federal court jurisdiction over the parties' dispute concerning a contractual provision that has nothing to do with the goals and purposes of the Act. Simply because the contractual provision in dispute is found in an interconnection agreement does not mean that the matter belongs in federal court. Rather, the inescapable conclusion is that this Court does not have jurisdiction over this state law contract case, which must therefore be remanded to state court.

## III.   CONCLUSION

This Court need not decide the issue of whether Verizon must first present its claim to the NY PSC before bringing an action in federal court. Without subject matter jurisdiction, this Court cannot reach Choice One's exhaustion claim. The only course of action is to remand this case to State court, which the Clerk of the Court is directed to do.[93] The Clerk of the Court is further directed to close this motion [Document # 6] and this case.

---

[93]   *See, e.g., Macro v. Independent Health Ass'n, Inc.*, 180 F. Supp. 2d 427, 431 (W.D.N.Y. 2001) (stating that when a defendant improperly removes a case to a court that lacks jurisdiction, the court must remand and has no authority to make any substantive rulings).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            March 26, 2007

## - **Appearances** -

**For Plaintiff:**

Richard H. Dolan, Esq.
Schlam Stone & Dolan LLP
26 Broadway
New York, New York 10004
(212) 344-5400

Scott H. Angstreich, Esq.
Kellogg, Huber, Handsen, Todd,
 Evans & Figel, P.L.L.C.
Summer Square
1615 M Street. N.W., Suite 400
Washington, D.C. 20036
(202) 326-7900

**For Defendant:**

Seth R. Goldman, Esq.
Paul A. Tuchmann, Esq.
Mintz Levin Cohn Ferris
 Glovsky and Popeo, P.C.
666 Third Avenue
New York, New York 10017
(212) 935-3000

33

.